# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| STUART LEE KLINGBEIL, | |
| Plaintiff, | No. C18-4075-LTS |
| vs. | |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |
| Defendant. | |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable Mark A. Roberts, United States Magistrate Judge. *See* Doc. No. 19. Judge Roberts recommends that I affirm in part and reverse in part the decision by the Commissioner of Social Security (the Commissioner) denying Stuart Lee Klingbeil's applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq., and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. Neither party has objected to the R&R. The deadline for such objections has expired.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

3

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Klingbeil applied for DIB and SSI on June 2, 2015, alleging disability due to a stroke, a heart murmur, high blood pressure and "no balance." Doc. No. 19 at 1-2 (citing AR 241-56, 266, 270). After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Klingbeil was not disabled as defined in the Act. Klingbeil argues the ALJ (1) improperly weighed the opinions of his treating physician, Dr. Meis, (2) improperly evaluated Klingbeil's credibility and (3) relied on a hypothetical question to the vocational expert (VE) that was not supported by the record. *Id.* at 8; *see also* Doc. No. 13. Judge Roberts addressed each argument separately.

#### A. *Analysis of the Treating Physician Opinion*

Judge Roberts noted that Dr. Meis has been Klingbeil's primary care physician for over 20 years. Doc. No. 19 at 8. On March 4, 2016, Dr. Meis wrote a letter stating Klingbeil has "uncontrolled hypertension, with subsequent hemorrhagic stroke." *Id.* (quoting AR 1147). He stated, "[t]he stroke has resulted in significant disability, with difficulty with ambulation, memory problems, and increased anxiety and depression symptoms." *Id.* He opined that Klingbeil was unable to return to work and it is "uncertain if he ever will be able to recoup his losses from the stroke." *Id.* Dr. Meis also completed a check-box, fill-in the-blank form dated August 1, 2017, identifying the

4

following symptoms: "balance problems, poor coordination, loss of manual dexterity, weakness, slight paralysis, unstable walking, falling spells, numbness or tingling, pain, fatigue, vertigo/dizziness, headaches, difficulty remembering, confusion, depression, emotional lability, difficulty solving problems, problems with judgment, double or blurred vision, and speech/communication difficulties." *Id.* at 9 (quoting AR 1148). He concluded Klingbeil could stand and/or walk a maximum of two hours in an eight-hour workday. He could stand only five to ten minutes at a time and sit ten to fifteen minutes at a time before needing to switch positions. *Id.* (citing AR 1149). Dr. Meis found Klingbeil was limited to lifting and carrying up to 10 pounds occasionally and up to 50 pounds rarely. *Id.* (citing AR 115). He could never twist, crouch/squat, or climb ladders. He could occasionally climb stairs and would have significant limitations with reaching, handling and fingering with his left hand and arm. *Id.* He also had environmental restrictions related to heat, cold, humidity, fumes and dust. *Id.* Dr. Meis concluded Klingbeil was capable of low stress work and that he was likely to be "off task" 25 percent or more of a typical workday due to his impairments and would likely miss on average more than four days of work per month. *Id.* (citing AR 1151). The only narrative Dr. Meis provided on the form addressed Klingbeil's ability to work at a regular job on a sustained basis. He wrote: "High levels of Anxiety . . . memory and task management poor with increased stress due to above." *Id.*

The ALJ gave Dr. Meis' opinions little weight. Klingbeil argues Dr. Meis' opinions should have been given greater weight given that he has been Klingbeil's primary care doctor for over 20 years. *Id.* at 13 (citing Doc. No. 13 at 6-7). Because the ALJ gave Dr. Meis' opinions less than controlling weight, Judge Roberts considered the ALJ's evaluation of it according to the factors listed in 20 C.F.R. § 404.1527(c)(2). *Id.* These factors are: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization and (6) other factors. *Id.*

5

With regard to the length of treatment and frequency of examination, Judge Roberts noted this factor weighed in favor of giving Dr. Meis' opinions more than little weight based on his 20-year treating history with Klingbeil. As to the nature and extent of the treatment relationship, Judge Roberts observed that Klingbeil saw Dr. Meis for hypertension, psoriasis, medication reviews, shoulder pain, insomnia, anxiety, depression, allergies and follow-up appointments after various hospitalizations and surgeries, and for routine immunizations. *Id*. at 14 (citing AR 737-39, 913-19, 971-73, 981-83, 1011-25, 1032-37, 1055-62, 1074-77, 1095-1103). While Dr. Meis did not cite any of his treatment notes in support of his opinions, Judge Roberts noted they did document long-term treatment of Klingbeil's hypertension, which was the cause of his stroke. Also, while Dr. Meis did not provide specialized care for Klingbeil's stroke and is not a mental health specialist, Judge Roberts concluded this factor weighs slightly in favor of affording the opinions more than little weight based on the long-term treating relationship and the fact that Dr. Meis has treated Klingbeil for many different issues. *Id*. at 14-15.

Next, Judge Roberts considered the supportability of Dr. Meis' opinions. He noted that one opinion was provided in a letter addressed "To Whom it May Concern" while the other opinion was provided in a check-box form. *Id*. at 15. Neither opinion provided any reasons for his conclusions or referenced any medical records. Therefore, Judge Roberts concluded Dr. Meis' opinions consisted of vague, conclusory statements. *Id*. at 16 (citing *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018)). Judge Roberts then discussed Dr. Meis' treatments notes and concluded they did not support his opinions. For instance, multiple notes after Klingbeil's stroke documented that his blood pressure was normal as opposed to Dr. Meis' comment in the March 2016 letter that he had "uncontrolled hypertension." *Id*. His treatment notes from August 2015 through January 2016 also did not mention any "difficulty with ambulation," "depression" or "memory problems." *Id*. at 17. A treatment note from January 12, 2016, indicated that Klingbeil was taking his anxiety medication on an as-needed basis, which was not every

6

day. *Id.* at 16-17 (citing AR 1034). This was the last treatment note in the record prior to Dr. Meis' March 2016 letter.

Judge Roberts also found that Dr. Meis' August 2017 opinion was not supported by contemporaneous treatment notes. Contrary to the symptoms identified in this opinion, Dr. Meis did not record any vision issues, depression, problems with judgment, difficulty remembering, difficulty solving problems or speech/communication difficulties in his treatment notes. *Id.* at 17 (citing AR 1148). Indeed, Judge Roberts noted that Klingbeil specifically denied having blurred or double vision during visits when he was asked about this. *Id.* (citing AR 738, 837, 914, 918, 972, 982, 1012, 1023, 1059, 1075, 1102). The single time Dr. Meis documented "weakness" was when Klingbeil reported shaking in his left hand, which Dr. Meis explained was a post residual effect of the stroke that would be more pronounced if Klingbeil was fatigued. *Id.* at 17-18 (citing AR 1059, 1061). Dr. Meis consistently noted Klingbeil's motor functions were "grossly intact." *Id.* at 17 (citing AR 914, 973, 1013, 1025, 1077). The last treatment note before his August 2017 opinion is dated April 4, 2017, in which Dr. Meis wrote that Klingbeil denied "abnormal gait, focal weakness, . . . dizziness or lightheadedness." *Id.* at 18 (citing AR 1102).

Dr. Meis' treatment notes did not contain any indication of Klingbeil's sitting, standing, walking, lifting and carrying capabilities. Therefore, Judge Roberts considered this aspect of Dr. Meis' opinions unsupported. Judge Roberts noted that it did not appear Dr. Meis and Klingbeil ever discussed Klingbeil's ability to engage in such activities for extended periods of time in his day-to-day life, nor did they discuss any of the environmental issues, irritants or limitations that Dr. Meis included in his opinions. *Id.* Judge Roberts noted that other treatment notes also did not provide much support for the extreme limitations identified in Dr. Meis' opinions. Dr. Meis noted in April 2016 that Klingbeil was walking with a cane, but had "been doing fairly well, with no large health problems." *Id.* (citing AR 1058, 1061). Dr. Meis also documented Klingbeil's complaint of left hand shaking at this appointment. Dr. Meis saw Klingbeil again on October 3,

2016, for a medication review. His blood pressure was normal and he stated Klingbeil was "doing fairly well." *Id.* (citing AR 1077). Again, on April 4, 2017, Klingbeil was noted to be "doing well" and his hypertension was "under good control." *Id.* (citing AR 1102-03). At this appointment, Klingbeil denied abnormal gait, dizziness and lightheadedness. *Id.* Dr. Meis also commented that Klingbeil's anxiety and depression were stable. *Id.* Dr. Meis made no changes to Klingbeil's medication or treatment other than to encourage him to work on diet, exercise and weight loss. *Id.* Judge Roberts noted that the mention of a cane 16 months prior to Dr. Meis' check-box opinion and one mention of hand shaking 10 months prior to that same opinion cannot be considered contemporaneous treatment notes in support of his opinions. Judge Roberts reasoned that while Klingbeil may have some issues with his left hand and need to use a cane at times, the treatment notes surrounding Dr. Meis' opinions do not support the limitations identified therein. Judge Roberts concluded this factor supported the ALJ's decision to give Dr. Meis' opinions little weight. *Id.* at 19.

As to consistency, the ALJ specifically found that Dr. Meis' opinions were not fully consistent with the record as a whole and cited treatment notes from other physicians in which Klingbeil's "physical examinations were largely normal." *Id.* (citing AR 19). Judge Roberts found the record supported the ALJ's assessment of this factor. He noted that no medical records, including Dr. Meis' treatment notes, indicate that Klingbeil requires 15-minute breaks and needs a week off work every month. He concluded the ALJ properly rejected these limitations. *Id.* Judge Roberts also found that the record did not support limitations of double or blurred vision. *Id.* at 20. Klingbeil's stroke occurred on February 11, 2015. He did not report any vision problems at his follow-up appointment on March 13, 2015. *Id.* (citing AR 460-61). He also did not mention any vision problems in later appointments. *Id.* (citing AR 466-67, 660, 1042).

While there was support in the record for vertigo/dizziness and Klingbeil's occasional use of a cane, Judge Roberts noted that it appeared the dizziness was intermittent as it was mentioned infrequently in treatment notes. *Id.* The treatment notes

documented dizziness shortly after Klingbeil had his stroke, but providers noted the symptoms were the worst when Klingbeil moved his head rapidly and were resolving within the first month after the stroke. *Id.* (citing AR 470). When Klingbeil later experienced dizziness in May 2015 after taking diuretics, the dosage was decreased and his dizziness improved. *Id.* (citing AR 556). The only other treatment note documenting similar symptoms is dated January 8, 2016, when Klingbeil reported he had "poor balance, feels drunk." *Id.* (citing AR 1028). The provider thought these issues were related to a small stroke earlier that year as well as to a previous large stroke. *Id.* Thus, Judge Roberts concluded there was some support for Dr. Meis' opinion that Klingbeil experiences occasional dizziness.

As to his occasional use of a cane and Dr. Meis' opinion that Klingbeil experiences "unstable walking," a treatment note dated April 2, 2015, documented that Klingbeil "is using a cane, and most of the time, he does not even use that." *Id.* at 20-21 (citing AR 460). Five days later, the same provider noted that Klingbeil was "hardly using his cane at all." *Id.* at 21 (citing AR 468). In addition to the January 8, 2016, note discussed above regarding poor balance and feeling drunk, another provider noted on June 29, 2015, that Klingbeil's gait was "mildly unsteady" and he "had poor balance feels drunk." *Id.* (citing AR 669). Again, these symptoms were attributed to Klingbeil's strokes. The only other documentation of Klingbeil's need to use a cane is from his wife who states he uses it "occasionally," and then only when he "is tired and weak after physical therapy." Judge Roberts concluded there was some support in the record for Klingbeil's occasional use of a cane.

As to limitations attributed to weakness, Judge Roberts found the record does not support a finding of weakness to the point of needing the extent of breaks and rests identified in Dr. Meis' opinions. Judge Roberts observed that numerous treatment notes after Klingbeil's stroke indicated he had good grip strength in his upper extremities bilaterally, no weakness, muscle strength of 5/5 bilaterally, "good strength and sensation" and "near normal strength for bilateral hands for grip strength as well as for

9

wrist and elbow strength." *Id.* (citing AR 539, 662-64, 669, 923). His shoulder pain limited his shoulder strength to 3/5 and 4/5. *Id.* (citing AR 923-24). On October 14, 2016, Klingbeil reported feeling "quite well." He also told another provider he could prepare meals, perform household chores, take care of children, work outside and do laundry. *Id.* (citing AR 928). He told the Social Security Administration that he needs to rest only a "few minutes or until [his] legs get steady again" if he needs a rest while walking. Judge Roberts concluded the record did not support the weakness-related limitations identified in Dr. Meis' check-box opinion. *Id.* at 22.

Finally, with regard to Klingbeil's psychological limitations, Judge Roberts noted Dr. Meis stated the following: "high levels of anxiety, patient's memory and task management [are] poor with increased stress due to the above." *Id.* (citing AR 1151). Judge Roberts concluded that the record supports Klingbeil's anxiety but does not indicate that Klingbeil would need to be off task 25 percent of the workday or away from work more than four days per month. *Id.* He also did not find the record supported the severe memory problems identified by Dr. Meis. In discussing the treatment notes related to Klingbeil's psychological limitations, Judge Roberts observed that following Klingbeil's stroke, his memory was intact and affect appropriate, he was alert and oriented, his overall mental status was good, he was in no acute distress, was cooperative, had clear and appropriate speech, good mentation and normal mood and affect. *Id.* at 22-23 (citing AR 471, 539, 602, 664, 669). On November 19, 2015, a treatment note documented that Klingbeil's short- and long-term memory and concentration appeared to be "somewhat impaired." *Id.* at 23 (citing AR 928). This same provider noted that Klingbeil's anxiety symptoms could make it difficult for him to work effectively, but he should be able to understand instructions, procedures and locations and have the ability to carry them out. *Id.* (citing AR 929). He could also interact appropriately with supervisors, coworkers and the public; use good judgment and responds to changes. *Id.* (citing AR 929, 931). The provider stated Klingbeil's prognosis for his mental health issues was good with appropriate treatment. *Id.*

Overall, with regard to the consistency factor, Judge Roberts concluded the record as a whole indicates that Klingbeil has some limitations, but they are not as debilitating as described in Dr. Meis' opinions. Thus, he found this factor supported the ALJ's decision to give those opinions little weight.

The final factor Judge Roberts considered was specialization. Because Dr. Meis is a general practitioner and regularly refers Klingbeil to specialists and communicates with them regarding Klingbeil's specialty healthcare, Judge Roberts concluded this factor supported the ALJ's decision to give Dr. Meis' opinions little weight. After considering all five factors, Judge Roberts concluded the ALJ conducted a proper analysis of Dr. Meis' opinion and that substantial evidence in the record as a whole supports the ALJ's decision.[2]

## B. *Klingbeil's Credibility*

Klingbeil argues the ALJ erred in discounting his subjective complaints because he stated that Klingbeil's "statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical records and other evidence in the record" without identifying the inconsistencies. *Id.* at 25.

Judge Roberts noted the ALJ's statement that "evidence of the claimant's daily activities along with the objective medical evidence discussed above establishes that the claimant has a greater sustained capacity than he alleges." *Id.* (citing AR 19). Judge Roberts observed that Klingbeil's arguments appeared to challenge the ALJ's analysis related to two of the *Polaski* factors the ALJ is obligated to consider – his functional restrictions and his daily activities. *Id.* at 27. Judge Roberts concluded the ALJ did not

---

[2] To the extent Klingbeil challenges other medical opinions in the record, Judge Roberts noted that his arguments were not clear, and in any event, such arguments were without merit. He found the ALJ appropriately gave great weight to the opinion of Dr. Larson, a specialist in psychology, and partial weight to the state agency consultant opinions. The ALJ supported these weights with good reasons that are supported by substantial evidence in the record as a whole. *See* Doc. No. 19 at 25, n.9.

properly acknowledge and examine the *Polaski* factors before discounting Klingbeil's subjective complaints.

First, with regard to Klingbeil's functional limitations, Klingbeil alleged that due to his stroke, he is unable to drive, has dizzy spells, memory problems, balance problems, problems standing for more than 10 minutes at a times and limited dexterity and grip with his left hand. *Id.* at 28 (citing Doc. No. 13 at 8-9). Judge Roberts concluded the ALJ thoughtfully considered these claimed limitations and adopted some of them into the RFC. For the limitations he did not adopt, Judge Roberts found the ALJ explained his reasons for doing so by citing the medical evidence, testimony and Klingbeil's submissions to the Social Security Administration. *Id.* While Klingbeil argues the ALJ combed through the medical records and relied on the non-examining state agency consultants to discredit his subjective complaints, Judge Roberts reasoned that the ALJ *further* limited the opinions of the state agency consultants in some instances and provided good reasons for giving lesser weight to other aspects of their opinions. The ALJ was also required to examine all of the medical evidence in the record and, as explained above, provided good reasons for giving the state agency opinions greater weight than the opinions of Dr. Meis. *Id.*

With regard to Klingbeil's daily activities, Judge Roberts noted the Commissioner conceded the ALJ did not discuss how Klingbeil's activities may have conflicted with his claimed symptoms. *Id.* (citing Doc. No. 16 at 16). The ALJ explicitly cited Klingbeil's daily activities as a reason for discounting his subjective complaints. However, Judge Roberts found he did not acknowledge, consider or provide any analysis as to Klingbeil's daily activities and how they were inconsistent with the allegations of disability. *Id.* at 29. Moreover, he found the omission of any mention of Klingbeil's daily activities could not be attributed to any "arguable deficiency in opinion-writing technique . . . [that probably] had no practical effect on the outcome of the case." *Id.* (quoting *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). Judge Roberts recommends the case be remanded for the ALJ to consider how Klingbeil's activities of daily living affect the ALJ's decision regarding Klingbeil's subjective complaints. *Id.*

## C. *Hypothetical Question to the VE*

Klingbeil argues the ALJ relied on a defective hypothetical in determining whether he could perform other work available in the national economy. He contends the RFC (on which the hypotheticals are based) improperly omitted restrictions identified by Dr. Meis and that even if the findings of the ALJ were supported by the evidence, such restrictions dictate a finding of disability. *Id.* at 33 (citing Doc. No. 13 at 10-11).

Judge Roberts noted the ALJ's first hypothetical to the VE was based on a person limited to sedentary exertion as defined in the Social Security regulations with the following additional limitations:

> no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps and stairs; the person should not climb ropes, ladders, or scaffolds; the person should not be around workplace hazards such as moving mechanical parts or unprotected heights; the person should not be around extreme temperatures or pulmonary irritants such as dusts, odors, gases, or fumes; should not perform more than frequent fingering, feeling, and handling with the left non-dominant upper extremity; the person should not perform more than occasional pushing, pulling, or operation of the foot controls with the lower left extremity; the person would be limited to no more than frequent visual accommodation or sharp focus . . . . [T]he person would require a cane for any periods of ambulation or being on their feet.
>
> Mentally, the person is limited to simple, routine, repetitive tasks and instructions; should face no more than occasional social interaction with coworkers, supervisors, or the public; should face no more than occasional changes in the workplace environment or routine; and then could not perform assembly line, fast-paced, high production quota type work.

*Id.* at 30-31 (citing AR at 71-72). The VE identified jobs of addresser, document preparer and polisher of eye frames, which exist in significant numbers in the national economy.

The ALJ then added restrictions that the same person described in the first hypothetical could perform "no more than 10 minutes of interrupted [sic] standing or 30 minutes of uninterrupted sitting without a brief change in position." *Id.* at 31 (citing AR 73). The VE testified that none of the above-identified jobs would be eliminated by these

additional restrictions.  Finally, the ALJ's third hypothetical was based on the person described in the first hypothetical with additional limitations of missing up to four days of work per month on an unscheduled basis and being off task throughout the day up to two hours or 25 percent of the workday.  *Id.* (citing AR 73-74).  The VE concluded that these restrictions would eliminate all jobs.  *Id.*

Klingbeil's attorney also posed some hypothetical questions to the VE.  The first hypothetical included a limitation of being redirected every hour to perform simple tasks in addition to the limitations identified in the first hypothetical.  *Id.* at 32 (citing AR 74-75).  The VE testified this person would not be able to perform any of the jobs the VE had previously identified.  Second, the attorney inquired whether a person who was able to stand no more than an hour and a half in an eight-hour workday would be able to perform sedentary work.  *Id.*  The VE responded that such a person would not be able to perform any type of sedentary work.  Third, the attorney asked whether the previously identified jobs would be available for a person who needed to take extended breaks of 20 minutes or more multiple times per day away from sitting and standing.  The VE responded that all of the previously-identified jobs would be eliminated by this additional restriction.  *Id.*  Finally, the VE confirmed that the previously identified jobs all required sitting at least six hours per day and standing two hours or less.  *Id.*  The ALJ determined that Klingbeil could not perform any of his past relevant work but would be able to perform other work that exists in significant numbers in the national economy such as addresser, document preparer and polisher of eye frames.  *Id.* at 33 (citing AR 20-21).

In addressing Klingbeil's first argument concerning whether the hypothetical questions included all relevant limitations, Judge Roberts reasoned that the additional limitations identified by Dr. Meis were properly excluded based on the ALJ's evaluation of Dr. Meis' opinions.  *Id.*  To the extent Klingbeil argues some of the limitations identified by Dr. Meis are "unrefuted," Judge Roberts noted Klingbeil did not state precisely which limitations he was referring to.  *Id.* at 34.  Judge Roberts found the ALJ "proffered hypotheticals that included the limitations he found supported by the record

14

as a whole and then relied on the VE's responses to those hypotheticals when concluding there were jobs available in the national economy that Claimant could perform." *Id.* Because the ALJ found the severe limitations identified in Dr. Meis' opinions were not supported by the record as a whole, the ALJ properly eliminated such limitations from the hypothetical he relied on or rejected the hypotheticals that included such extreme limitations. *Id.* Judge Roberts concluded the ALJ also properly explained his reasons for rejecting the inclusion of such limitations or impairments in the RFC. For all of these reasons, Judge Roberts recommends that I affirm in part and reverse and remand in part the decision of the ALJ. *Id.* at 35. He recommends that I remand for the ALJ to consider how Klingbeil's activities of daily living affect his analysis of Klingbeil's subjective complaints. He further recommends that if the ALJ finds on remand that Klingbeil's subjective complaints do have merit and necessitate changes to the RFC, the ALJ be ordered to conduct a new hearing with a VE. *Id.*

## IV. DISCUSSION

Because the parties did not object to the R&R, I have reviewed it for clear error. Judge Roberts applied the appropriate legal standards in considering whether the ALJ properly weighed Dr. Meis' opinions and Klingbeil's credibility and whether the hypothetical question he relied on was supported by substantial evidence in the record. Based on my review of the record, I find no error – clear or otherwise – in Judge Roberts' recommendation. The ALJ provided good reasons supported by substantial evidence for giving Dr. Meis' opinions little weight and excluding the more extreme and unsupported limitations from the RFC and hypothetical question to the VE. However, the ALJ's analysis of Klingbeil's credibility falls short. The ALJ cited Klingbeil's daily activities as a reason to find Klingbeil was not as limited as alleged but failed to discuss those daily activities anywhere in his decision and explain why they were inconsistent with his subjective complaints. As such, I adopt the R&R in its entirety, including Judge Roberts' recommendation that this case be remanded to the ALJ to reconsider Klingbeil's

15

subjective complaints. If that evaluation changes the ALJ's RFC assessment, the ALJ shall hold a new hearing and obtain testimony from a VE regarding whether there are jobs that exist in significant numbers in the national economy that Klingbeil can perform.

## V. CONCLUSION

For the reasons set forth herein:

1. I **accept** Judge Roberts' R&R (Doc. No. 19) without modification. *See* 28 U.S.C. § 636(b)(1).

2. Pursuant to Judge Roberts' recommendation:

    a. The Commissioner's determination that Klingbeil was not disabled is **affirmed in part and reversed in part** and this matter is **remanded** to the Commissioner for further proceedings as described by Judge Roberts.

    b. Judgment shall enter in favor of Klingbeil and against the Commissioner.

    c. If Klingbeil wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e., 30 days after the 60-day time for appeal has ended. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED.**

**DATED** this 16th day of September, 2019.

_____
Leonard T. Strand, Chief Judge